**Cleophus FEEMSTER, Appellant,**

v.

**Tony DEHNTJER, Ted Brand, Don Cooksey, Appellees.**

**No. 80–2027.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1981.

Decided Oct. 7, 1981.

Rehearing and Rehearing En Banc Denied Nov. 3, 1981.

Charles Alan Seigel, H. Kent Munson, Stolar, Heitzmann, Eder, Seigel & Harris, Francis J. Hruby, St. Louis, Mo., for appellant.

Joseph R. Niemann, City Counselor, Judith A. Ronzio, Asst. City Counselor, St. Louis, Mo., for appellees.

Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Cleophus Feemster brought this action for damages under 42 U.S.C. § 1983, claiming that the defendant police officers beat him without provocation after he had submitted to arrest. The jury returned a verdict for defendants. Plaintiff appeals, arguing that the trial court erred in giving certain instructions to the jury. We agree and reverse.

On the night of February 14, 1980, the plaintiff, his brother, Raymond Feemster, and his sister, Laura Williams, were in the basement apartment of their mother's home in St. Louis, Missouri (Tr.14). When police officers, including defendants, went to the apartment to execute a search warrant, a gunfight erupted. During the exchange of gunfire defendants Dehntjer and Cooksey

were both injured, and the plaintiff was shot in the leg. After the initial gun battle, the police officers retreated and called for the firing of tear gas into the apartment (Tr.138, 264). Cleophus and Raymond Feemster and Laura Williams subsequently surrendered peacefully to the officers (Tr. 145, 177, 207, 211).

Cleophus Feemster later sued defendants, claiming (1) that they broke into his mother's home without a valid warrant, and (2) that they beat him after he surrendered and refused to provide him proper medical attention. Count I of the amended complaint, which pleaded both these theories, was based on 42 U.S.C. § 1983. Count II alleged a common-law battery arising out of the same events. Cooksey and Dehntjer filed a counterclaim alleging that Feemster had shot and wounded them. They each asked for an award of one dollar in actual damages and $20,000 in punitive damages. The jury returned a verdict for the defendants on both counts of the complaint, and for the plaintiff on the counterclaim brought by defendants. Under the jury verdict, neither side recovered any damages.

Plaintiff's counsel began the trial by pressing both his theories of liability under Count I. In his opening statement to the jury, for example, he offered to prove that defendants entered the apartment forcibly and without a valid warrant, and that they immediately and unjustifiably opened fire on plaintiff and his family once they were inside the apartment (Tr.4). Plaintiff and his brother gave testimony to this effect (Tr.17, 18). Thus, plaintiff's trial strategy was initially to press both aspects of his § 1983 claim—the theory based on defendants' pre-surrender conduct in allegedly breaking into the home without lawful authority, and the theory based on defendants' post-surrender conduct in allegedly beating the plaintiff after he had peacefully submitted to arrest.

As the proof developed, however, plaintiff's counsel apparently concluded that his chance for a verdict based on defendants' pre-surrender conduct was small.

There was evidence that defendants in fact had a valid warrant, and that shots were fired on both sides after they entered the apartment. Counsel decided to abandon pre-surrender events as a basis of liability, though of course those events remained relevant to the counterclaim and plaintiff's defense against it. In his closing argument, counsel abandoned any affirmative claim based on pre-surrender events, and limited the complaint to the claim that defendants had beaten plaintiff after his surrender. Counsel said:

> Let me explain to you just exactly what this case is all about and what this case is not about. Count I of my client's complaint against the three police officers that you see here is for deprivation, or taking away the civil rights of my client. I want to have one thing perfectly clear in your mind when you leave here. On Count I when we are talking about whether or not those police officers took away the civil rights of my client, we are talking only about those events which occurred after my client surrendered to the police. We are not talking about one thing that happened while they were still in the house ... (Tr.275).

Count II was similarly limited.

> Count II of my client's complaint against these defendants is for what we call a common law battery, and let me read to you what I think the Judge will instruct you with respect to our Count II. I anticipate that the Judge will read to you this instruction of the law, and again, I would like to have you pay very careful attention to it when you hear it. Notice very carefully the words: 'Your verdict must be for plaintiff on Count II if you believe, first, defendant intentionally struck, hit, kicked or beat plaintiff after he had surrendered and offered no resistance, and second, defendants thereby caused plaintiff bodily harm' (Tr.278).

Counsel thereby clearly informed the jury that only the events which occurred *after* the surrender should be considered in connection with plaintiff's complaint. He made no claim based on pre-surrender

events. They were mentioned only in connection with plaintiff's defense to the counterclaim:

MR. MUNSON [counsel for plaintiff]: Ladies and gentlemen, let me just respond to a couple of things you have just heard.

Number one, you heard talk about a counterclaim. Now those events that took place in the house that night are relevant. You can consider them with respect to the counterclaim. But with respect to plaintiff's claim against those officers, those events started when they had surrendered peacefully. Just keep that in mind. Totally separate (Tr.298).

After the closing arguments, the court went into chambers to settle the jury instructions. Plaintiff's counsel objected to proposed instructions 34 and 36. The magistrate rejected his argument (Tr.305) and retained these instructions.

The disputed instructions read in pertinent part:

The defendants had the lawful authority, indeed the lawful duty under State law, to use such physical force as may have been reasonably necessary to preserve the public peace, prevent crime, arrest offenders, and execute search warrants, and to protect the public, other police officers, and themselves as well, from physical harm at the hands of any person, including of course the plaintiff.

So, even though you should find from a preponderance of the evidence in the case that the acts alleged by the plaintiff were in fact knowingly done by the defendants, if you also find that they were done for any one or more of the lawful purposes mentioned, such conduct of the defendants was not beyond the bounds of their lawful authority under State law, and so was lawful, unless you further find, from a preponderance of the evidence in the case, that the defendants used more or greater force or means on the plaintiff than would have appeared to a reasonable person, in like circumstances, to be necessary in order to accomplish the lawful purpose or purposes intended (Instruction 34, Tr.327) . . .

If the defendant reasonably believed that he was acting by authority of a valid statute or ordinance, and acted in good faith [on] the basis of this belief and with a reasonable belief in the validity of his actions, then this reasonable belief and good faith action should constitute a defense to the plaintiff's claim of deprivation of liberty without due process of law (Instruction 36, Tr.329).

Instruction 34 allows "reasonable force" as an affirmative defense, and instruction 36 allows "good faith."

Plaintiff argues on appeal, and we agree, that these instructions should not have been given because they concern defenses to allegations that plaintiff had withdrawn. The instructions are in general a correct statement of the law, but in this case they were inapposite, because they could properly apply only to the claim (later abandoned) based on defendants' pre-surrender conduct. No one contended that plaintiff resisted arrest when the officers returned the second time. Thus, there could be no question of "reasonable force" or "good faith" in the case at the time it went to the jury. There is no occasion for the use of any force against a prisoner who quietly submits. "Reasonable force" and "good faith" might still have been relevant on the counterclaim, but the instructions were not so limited. As given, the instruction left it open to the jury to return a verdict for defendants because of plaintiff's provocative pre-surrender conduct. We think this was error. No matter how difficult it is to apprehend a prisoner, the law does not permit officers to beat him once he is securely in custody. They may use force to subdue him if necessary, but they may not avenge themselves for his pre-surrender conduct by punishing him bodily after he has submitted. This Court has long recognized that "instructions may not in their language leave the way open to a jury to consider some question urged, suggested, or mentioned on the trial, which *is not an issue* or is not supported by the evidence." *Fleming v. Husted*, 164 F.2d 65, 69 (8th Cir.

1947), *cert. denied*, 333 U.S. 843, 68 S.Ct. 661, 92 L.Ed. 1127 (1948) (emphasis supplied).

 Defendants argue that the jury instructions were properly based on material issues raised in the pleadings. It is true that the complaint made claims based on both pre- and post-surrender conduct. But the pleadings alone do not determine the material issues of a case.

An instruction should be given on every material issue. Although there are statements that 'it is the duty of the trial court to instruct the jury on issues raised by the pleadings and supported by the evidence and nothing more,' that is not literally accurate.... Of course there need not be an instruction on an issue not presented by the pleadings nor effectively raised at the trial. *Nor should a charge be given on a matter, whether or not raised in the pleadings, if it is not supported by the evidence.*

9 C. Wright and A. Miller, Federal Practice and Procedure § 2556 (1971) (emphasis added). The same must be true of issues raised by the pleadings *and* the evidence, if they are abandoned before submission to the trier of fact. The plaintiff is master of his claim. He may abandon a theory of liability during the trial, and if he does the jury should be clearly instructed only on those issues that it will consider.

Plaintiff also claims the trial court improperly commented to the jury on a witness's reasons for failing to testify. We see no unfairness or abuse of discretion in the trial court's action in this regard. As the issue is unlikely to arise again at the new trial, there is no reason to discuss it at length.

The judgment is reversed, and the cause is remanded for a new trial on Count I (§ 1983) and Count II (battery)[1] in accordance with this opinion. Costs will be taxed against appellees. As plaintiff has not yet prevailed on any claim, there is no occasion

at this point to consider any award of attorneys' fees.

It is so ordered.

---

1. Instructions 34 and 36 in terms pertained only to Count I, but under the circumstances of this case there is a substantial probability that the jury's verdict on Count II may also have been tainted by these instructions.