James Keith **BAUER** and Mary Ellen Bauer, Appellees,

v.

Mark **NORRIS**, individually and as deputy of the McCook County Sheriff's Office, South Dakota, Appellant.

**Mark England.**

No. 82–2015.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1983.

Decided Aug. 8, 1983.

Edwin E. Evans, Michael J. Schaffer, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for appellant.

John N. Gridley, III, Sioux Falls, S.D., for appellees.

Before ROSS, ARNOLD and JOHN R. GIBSON, Circuit Judges.

ROSS, Circuit Judge.

Plaintiffs-appellees James and Mary Bauer filed an action in federal district court against defendants Mark Norris and Mark England, deputy sheriffs for McCook County, South Dakota, alleging false arrest, false imprisonment, malicious prosecution, and violations of plaintiffs' civil rights under 42 U.S.C. § 1983 (1976). District court jurisdiction was based on 28 U.S.C. §§ 1331 and 1343 (1976). The suit arose out of appellees' arrest, detention, and prosecution for disorderly conduct by Deputies Norris and England in 1979. A jury returned a verdict in favor of Deputy England on all claims and in favor of Deputy Norris on the state law claims of false arrest, false imprisonment and malicious prosecution. However, the jury found appellant Norris liable for a violation of appellees' civil rights, and awarded each appellee $7500 in

damages. The district court[1] entered a judgment in accordance with the verdict on May 19, 1982, and denied appellant Norris' motions for a judgment notwithstanding the verdict or a new trial on July 30, 1982. Norris appeals on the grounds that the evidence was insufficient to support the verdict, the verdicts were inconsistent, he was entitled to the defense of good faith as a matter of law, the damages awarded were excessive and the trial court's instructions on the use of excessive force were erroneous. We affirm the judgment of the district court.

*Sufficiency of the Evidence*

Appellant maintains that the trial court erred in failing to grant his motion for a judgment notwithstanding the verdict on the grounds that there was insufficient evidence to show that appellant violated appellees' civil rights by using excessive force in the course of an arrest. Appellate review of such a challenge is governed by the familiar principle that the evidence must be viewed in the light most favorable to sustaining the jury's verdict, giving the prevailing party the benefit of all inferences which reasonably may be drawn from the evidence. *See, e.g., Harris v. Pirch,* 677 F.2d 681, 683 (8th Cir.1982); *Linn v. Garcia,* 531 F.2d 855, 858 (8th Cir.1976). The jury's verdict should not be overturned unless the evidence, when so viewed, was such that reasonable persons could not differ as to the conclusion that the plaintiffs failed to meet their burden of proof on their cause of action. *See Harris v. Pirch, supra,* 677 F.2d at 683.

In the instant case the evidence viewed under these principles indicates that the Bauers spent the evening of July 14, 1979, with friends at a restaurant and lounge located approximately one-half mile from their home in Spencer, South Dakota. At about 11:00 p.m. they decided to walk home along the road running past the restaurant and their house. When they were about a block from their house they were stopped by defendant, Deputy Sheriff Norris, who was patrolling the area in his car. According to plaintiffs, Norris asked them "where the hell" they were going. After Mrs. Bauer responded that they were walking home, Deputy Norris demanded that they produce some identification. Mrs. Bauer told the defendant that they were the Bauers and pointed to their house. The Bauers continued walking toward their house. Deputy Norris turned his car around and when the Bauers were in front of their house, Norris blocked their path with his car. Norris got out of the car and told the Bauers they were not going anywhere until they showed him some identification. When the Bauers continued walking toward their house, Deputy Norris again stopped them. Mrs. Bauer testified that at this point they were standing in their yard and that she showed Deputy Norris the keys to their house.

A verbal confrontation between Deputy Norris and plaintiff Jim Bauer occurred during which they exchanged epithets and obscenities. Mrs. Bauer apparently attempted to convince her husband to show Deputy Norris identification, but Mr. Bauer refused to do so, apparently because of indignation at having been accosted by Deputy Norris without being given a reason. When the Bauers attempted to enter their house, Deputy Norris physically restrained Mr. Bauer and, according to Mrs. Bauer, threateningly raised a flashlight above Mr. Bauer's head, telling Bauer that he was going with him now.

Thereafter, Deputy Norris called for assistance. Defendant Deputy England arrived and was advised by Deputy Norris of what had transpired up to that point. Defendants subsequently arrested Mr. Bauer, placing him against the hood of the patrol car and tightly handcuffing his wrists behind his back.[2] Apparently, Mrs. Bauer complaining about her husband's arrest, approached the deputies with raised arms. She testified that each deputy grabbed one of her arms and pulled in opposite di-

---

1. The Honorable Fred J. Nichol, United States District Court for the District of South Dakota.

2. Deputy England actually placed the handcuffs upon Mr. Bauer's wrists.

rections. Subsequently, Mrs. Bauer was arrested without resistance, and her hands were tightly handcuffed behind her back by the deputies. The Bauers were charged with misdemeanor disorderly conduct.[3] At trial on this charge the Bauers' motion for judgment of acquittal was granted after the state had presented its case. The Bauers maintained that they suffered physical and emotional injuries as a result of their treatment by deputies Norris and England.

A law enforcement official's liability under 42 U.S.C. § 1983 for a violation of an individual's constitutional rights through the use of excessive force in completing an arrest is well established. *See Herrera v. Valentine,* 653 F.2d 1220, 1229 (8th Cir. 1981); *Putman v. Gerloff,* 639 F.2d 415, 420 (8th Cir.1981). In the instant case the trial court essentially instructed the jury that in determining whether the force used by appellant Norris was unnecessary or unreasonable, it must consider whether, in light of all the surrounding circumstances, Norris used a greater degree of force in the course of the arrest than would have appeared to be necessary to a reasonable person in similar circumstances in order to accomplish the lawful purpose intended.[4] *See Feemster v. Dehntjer,* 661 F.2d 87, 89 (8th Cir.1981); *Hamilton v. Chaffin,* 506 F.2d 904, 912 (5th Cir.1975); *Morgan v. Labiak,* 368 F.2d 338, 340 (10th Cir.1966). The court also instructed the jury that the appellant's liability for use of unnecessary force could be based on a finding that the "defendants acted as they did toward the plaintiffs not to perform their lawful duties but prompted by another unlawful motive * * *."[5] *See Putman v. Gerloff, supra,* 639 F.2d at 421. Furthermore, the court generally instructed the jury on appellant's defense of qualified immunity for official actions taken in good faith.[6] *See id.* at 639; *Harris v. Pirch,*

---

**3.** The Bauers were charged under S.D. Codified Laws Ann. § 22–13–1(5) (1979) which provides:

Any person who intentionally causes serious public convenience, annoyance, or alarm to any other person, or creates a risk thereof by:

\* \* \* \* \* \*

(5) Loitering or wandering upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any law enforcement officer to do so, if surrounding circumstances are such as to indicate to a reasonable person that the public safety demands such identification; is guilty of disorderly conduct. Disorderly conduct is a Class 2 misdemeanor.

Although the constitutionality of the South Dakota statute is not an issue in the present case, it should be noted that a similar statute was held to be unconstitutional by the Supreme Court in *Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

**4.** *See* Record at 536, 541.

**5.** Record at 541.

**6.** The court instructed the jury:

If the defendants reasonably believed that they had the lawful authority to arrest the plaintiffs and to charge them with disorderly conduct, and acted in good faith on the basis of this belief, then their reasonable belief and

good faith action would constitute a defense to the plaintiffs' claim of a violation of their civil rights.

Record at 538. In addition the court's instruction summarizing the plaintiffs' excessive force claims drew attention to the issue of the good faith belief and reasonableness of the defendants' belief concerning the amount of force that was necessary to complete the arrest. *See* Record at 541.

We reject appellant's contention that he was entitled to a finding of good faith immunity as a matter of law. Good faith is an affirmative defense concerning which the defendant bears the burden of pleading and proof. *See Harris v. Pirch,* 677 F.2d 681, 686 (8th Cir.1982); *Landrum v. Moats,* 576 F.2d 1320, 1329 (8th Cir.1978), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1979). "Because good faith is dependent on motivation and conduct of the defendant as established at trial, the validity of the defense is ordinarily a question for the jury." *Id.* (citations omitted). Viewing the evidence relating to the appellant's good faith defense in the light most favorable to the jury's verdict and giving the plaintiffs the benefit of all reasonable inferences to be drawn from that evidence, as we must, *see Harris v. Pirch, supra,* 677 F.2d at 687, we cannot conclude there was insufficient evidence to support the jury's implicit rejection of appellant's good faith defense.

We also reject appellant's argument that the trial court erred in submitting its instruction restating the elements of a violation of civil rights through the use of excessive force in that

*supra,* 677 F.2d at 687; *Feemster v. Dehntjer, supra,* 661 F.2d at 89; *Landrum v. Moats,* 576 F.2d 1320, 1327 (8th Cir.1978), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1979).

■ Although, in general the court's instructions correctly stated the law, the following ancillary principles guide our consideration of the appellant's use of force in the instant case:

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Putman v. Gerloff, supra,* 639 F.2d at 420 (quoting *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). "[T]he use of any force by officers simply because a suspect is argumentative, contentious, or vituperative" is not to be condoned. *Agee v. Hickman,* 490 F.2d 210, 212 (8th Cir.1974), *cert. denied,* 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143 (1974). "Force can only be used to overcome physical resistance or threatened force * * *." *Id. See also Feemster v. Dehntjer, supra,* 661 F.2d at 89 (force may not be used against a suspect who quietly submits); *cf. United States v. Harrison,* 671 F.2d 1159 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 104, 74 L.Ed.2d 94 (1982) (lack of provocation or need to use force would make any use of force excessive).

■ In the present case, the plaintiffs could have recovered on their civil rights claim relating to the deputy's use of force: (1) if the defendants used more force than that a reasonable person would have used in the circumstances; or (2) if the force was used for an improper purpose. *See Putman v. Gerloff, supra,* 639 F.2d at 421 (force used to injure, punish or discipline). It must be emphasized that the appellant's use of force in this case cannot be viewed in isolation, but must be considered in the context of all the circumstances leading up to the arrest and detention of the Bauers. The record contains scant, if any, evidence to suggest that a crime had been committed in the immediate vicinity where appellant Norris stopped the Bauers, or that appellant suspected the Bauers of committing any crime.[7] Moreover, there was no evidence that at the time appellant encountered the Bauers they were engaged in any wrongful conduct. It is also relatively clear that Deputy Norris did not give the Bauers a reason as to why he was stopping them, and that based on the record, the jury could have concluded that Deputy Norris was hostile toward the Bauers from the first moment he encountered them. It also is relevant to note that the crime for which the Bauers were eventually arrested, disorderly conduct, was a class two misdemeanor under South Dakota law. *See* S.D. Codified Laws Ann. § 22–13–1 (1979); note 3 *supra.* Finally, while there is evidence in the record that the Bauers, particularly Mr. Bauer,

the court failed to instruct on the good faith defense and did not define the scope of appellant's lawful authority. (*See* Record at 540–41). It is well established that the substantive accuracy of jury instructions is to be determined by considering the jury charge as a whole, and that " 'a single erroneous instruction will not necessarily require reversal if the error was cured by a subsequent instruction or by consideration of the entire charge.' " *McGowne v. Challenge-Cook Bros., Inc.,* 672 F.2d 652, 662 (8th Cir.1982) (quoting *Wright v. Farmers Co-op of Arkansas and Oklahoma,* 620 F.2d 694, 697 (8th Cir.1980)). We believe that the jury instructions, when viewed in their entirety, adequately advised the jury of the appel-

lant's good faith defense and sufficiently defined the scope of defendants' lawful authority. *See* Record at 535–42.

**7.** At trial Deputy Norris testified that at the time he encountered the Bauers he was investigating a hit and run accident involving a power line. However, the record reveals that the downed power line was on the side of town opposite from where the Bauers were walking and that the encounter between Norris and the Bauers occurred approximately an hour and a half after Norris had discovered the power line. Moreover, there is no evidence that Deputy Norris asked the Bauers about the power line incident at any time.

were argumentative, vituperative, and threatened legal action, there is virtually no evidence that either of the Bauers actually *physically* resisted or *physically* threatened either Deputy Norris or Deputy England at the time of the arrests. As we noted above, such verbal abuse alone does not justify the use of any force. "[F]orce can only be used to overcome physical resistance or threatened force * * *." *Agee v. Hickman, supra,* 490 F.2d at 212.

We acknowledge that the force applied in the instant case was relatively minor and that evidence supporting plaintiffs' claim might well have been stronger. We also recognize that both parties acted childishly in failing to resolve this dispute without the escalation of emotions which resulted in this action. Nevertheless, we conclude that the record, viewed in the light most favorable to the verdict, does support a conclusion by the jury that either the use of *any* force by appellant in the course of his encounter and arrest of the Bauers was unreasonable or the appellant used force not to perform his lawful duty, but for some other improper purpose.[8]

*Damages*

■ Appellant maintains that the $7500 damages awarded to each plaintiff was excessive. Our review of challenges to the amount of a jury verdict is extremely narrow.

"[I]nadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; * * * we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is 'plain injustice' or a 'monstrous' or 'shocking' result."

*Herrera v. Valentine, supra,* 653 F.2d at 1231 (quoting *Taken Alive v. Litzau,* 551 F.2d 196, 198 (8th Cir.1977)) (other citations omitted).

■ Assuming liability is found under section 1983 the jury may assess compensatory damages based upon, *inter alia,* the physical harm suffered (including pain and discomfort), the emotional harm suffered (including fear, humiliation and mental anguish) even though no actual damages are proven, and the violation of plaintiffs' substantive right to liberty. *See Herrera v. Valentine, supra,* 653 F.2d at 1227–31; *Guzman v. Western State Bank,* 540 F.2d 948, 953 (8th Cir.1976). A jury may award more than a nominal sum for the deprivation of certain substantive constitutional rights, in-

---

8. Appellant also argues that the jury's verdict exonerating Deputy England was inconsistent with its finding that appellant violated the plaintiffs' civil rights, because the record discloses that any force applied to the Bauers was primarily applied by Deputy England. We disagree. First, it should be noted that appellant did not raise the issue of the inconsistency of the verdicts to the trial court at the time the jury returned its verdicts, and it is somewhat doubtful that appellant should now be allowed to raise this contention. *Cf. Herrera v. Valentine,* 653 F.2d 1220, 1226 n. 5 (8th Cir.1981) ("If the appellants believed that the jury's verdict was unclear when rendered, the burden rested upon them to move the court, to order the jury back into deliberation."). "Moreover, in reviewing the apparently inconsistent verdicts, this court must attempt to reconcile them if at all possible." *Sterling v. Commercial Union Ins. Co.,* 674 F.2d 697, 700 (8th Cir.1982) (cita-

tions omitted). In the instant case there is evidence that appellant Norris applied force by physically restraining Mr. Bauer, by assisting Deputy England in handcuffing Mr. Bauer, and by pulling on Mrs. Bauer's arm while restraining her. In addition, it is clear that Deputy England relied on Norris' explanation of what had transpired up to the point at which he arrived on the scene. Thus, the jury could have reasonably found that Deputy England acted in good faith in concluding that the confrontation was caused by the Bauers rather than Deputy Norris and in applying force he reasonably thought was necessary. *Cf. Putman v. Gerloff, supra,* 639 F.2d at 423 (qualified good faith immunity may be based on following another officer's orders or instructions). Under these particular facts and circumstances, we cannot conclude that the jury's verdicts were irreconcilable.

cluding the due process and liberty interests in freedom from excessive force at the hands of police officers, independent of any recovery for actual physical and emotional injury. *See Herrera v. Valentine, supra,* 653 F.2d at 1227–31. *See also Villanueva v. George,* 659 F.2d 851, 855 (8th Cir.1981) (en banc). *But see Hunter v. Auger,* 672 F.2d 668, 677 (8th Cir.1982) (nominal damages were appropriate for unconstitutional strip search in light of record and the availability of declaratory and injunctive relief). The trial court essentially instructed the jury in accordance with these principles. After reviewing the evidence concerning plaintiffs' physical and emotional injury, as well as the substantive constitutional violation suffered, we cannot conclude that the total jury verdict of $15,000 is a "monstrous" or "shocking" result.

Accordingly, we affirm the judgment of the district court.