Jackie R. YOUNGBLOOD, Plaintiff–Appellant,

v.

Scott H. WOOD, Defendant–Appellee.

No. 01–3109.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 2002.

Decided July 29, 2002.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

### ORDER

A jury ruled in favor of Illinois State Trooper Scott Wood in this 42 U.S.C. § 1983 suit alleging police brutality. The plaintiff, Jackie R. Youngblood, then sought a new trial pursuant to Federal Rule of Civil Procedure 59, arguing that the jury had returned a verdict contrary to the manifest weight of the evidence. The district court refused to order a new trial, stating that there is "ample" record evidence supporting the jury's verdict. Mr. Youngblood appeals from that denial, and we affirm.

This case begins during the evening hours of May 29, 1999, on a stretch of country road in downstate Illinois. Jackie Youngblood was driving his wife, Patrice, home from a friend's house when Scott Wood, a state trooper working on an alcohol countermeasures taskforce during the Memorial Day weekend, pulled them over because of the absence of license plates on their vehicle. The Youngbloods were traveling in Mr. Youngblood's brother's truck, which had a temporary registration tag posted on the back window. The tag was visible despite the presence of a four-wheeler in the bed of the truck, but Officer Wood did not see it until he had stopped the truck and was approaching the driver's side window.

Officer Wood explained why he pulled the couple over and asked for Mr. Youngblood's driver's license and proof of insurance. As he did so he smelled alcohol emanating from the truck. Mr. Youngblood, who is 5 inches taller and was 30 pounds heavier than Officer Wood, acknowledged having consumed two beers at his friend's house. Officer Wood then asked Mr. Youngblood several times if he would consent to a search of the truck. Mr. Youngblood refused consent each time and then refused to participate in a field sobriety test.

His requests to search and to perform a sobriety test rebuffed, Officer Wood returned to his patrol car to run a background check on Mr. Youngblood. He learned that Mr. Youngblood had been arrested for possession of narcotics and unlawful use of a weapon in 1989. When

Officer Wood approached the Youngbloods' truck a second time, he saw a beer bottle in the truck bed lying on canvas sacks near the passenger-compartment window. The beer bottle was cool, contained only a bit of foam and a small amount of liquid, and could be reached by Mr. Youngblood through the sliding glass of the truck's cab. Because Officer Wood considered the bottle an open container of alcohol accessible to the driver, he decided to arrest Mr. Youngblood for illegal liquor transportation. Immediately after handcuffing Mr. Youngblood and moving him near the truck's front left tire, Officer Wood leaned his head and shoulders into the truck to search it. The door of the truck then closed on Officer Wood from behind, prompting an altercation between Officer Wood and Mr. Youngblood. Mr. Youngblood ultimately sustained some extensive bruising, especially in his chest area. Two backup officers then arrived. Officer Wood transported Mr. Youngblood to jail and changed the charge from illegal liquor transportation to aggravated battery because of the shutting door. The record does not reveal the resolution of Mr. Youngblood's aggravated battery case.

After his release on bond, Mr. Youngblood filed this § 1983 action, claiming that Officer Wood used excessive force during his arrest in violation of the Fourth Amendment. The jury heard conflicting evidence throughout the ensuing trial. Regarding the initial phase of their encounter with Officer Wood, Mr. and Mrs. Youngblood testified that Mr. Youngblood was polite and cooperative while Officer Wood angrily asked him several times to consent to either a search of the truck or a sobriety test. Then, said the Youngbloods, after the officer handcuffed Mr. Youngblood he threw Mr. Youngblood into the truck so hard it left a large dent. Explaining the shutting door, Mr. Youngblood insisted that his shoulder hit the driver's side mirror as he turned to politely tell Officer Wood not to search his truck, causing the door to swing shut because the truck was parked on an incline on the road's shoulder. Mr. Youngblood then related that after the door shut on the officer, Wood grabbed him by the cuffs, swung him "wildly" in a half-circle, threw him to the ground and began slamming him up and down using his handcuffed hands as a lever. Next, according to Jackie and Patrice, who had not seen the officer slam her husband to the ground because her eyes were closed "out of fear," Officer Wood "bounced" Mr. Youngblood's head off the car's hood so hard it left another dent.

Mr. Youngblood supported his and his wife's account with several other witnesses. They called Danny Clevenger, a passing motorist who said he saw Officer Wood throw Mr. Youngblood into the truck with great force. In addition, Mr. Youngblood presented testimony from several jailers: one testified that Mr. Youngblood was bruised on the night he was booked; another said he had fresh grass trimmings on his shirt and in his hair when Officer Wood brought him in. That grass showed that Officer Wood threw him to the ground during the arrest, argued Mr. Youngblood. As further evidence that Officer Wood had thrown him to the ground, Mr. Youngblood called Officer Steve Colclasure, one of the two responding backup officers. Colclasure testified that Officer Wood told him that he had to "put [Youngblood] on the ground" because Mr. Youngblood had kicked the door, forcing it to strike him. Finally, regarding the extent of his injuries, Mr. Youngblood presented deposition testimony from two doctors who examined him after his release from jail, as well as pictures of his bruising.

Officer Wood told a different tale. He claimed that Mr. Youngblood was angry

and combative from the start of their encounter, yelling things like "I'm not getting out of the fucking truck. You're going to have to call reinforcements." He also said that after handcuffing Mr. Youngblood for illegal liquor transportation he moved Mr. Youngblood to face the truck near the front left tire without shoving him. Then, related the officer, he turned, bent down, and leaned his head and shoulders into the truck, preparing to search under the driver's side seat. Just then, the door of the truck swung to, hitting him in the arm and pushing his shoulder into the doorjam but not causing any injury. Officer Wood admitted that he did not see Mr. Youngblood push the door, and knew that because the truck was parked on an incline on the road's shoulder the door could have closed on its own after being pushed only a little. But, the officer claimed, he believed Mr. Youngblood had kicked the door into him, partly because Mr. Youngblood was yelling "Stop looking in my truck" when the door closed. In response to the shutting door, Officer Wood claimed to have grabbed Mr. Youngblood and shoved him "with force" against the side of the truck. He then forced Mr. Youngblood around to the front of the truck to avoid the Clevenger's passing car, and Mr. Youngblood did not resist. Officer Wood denied throwing Mr. Youngblood to the ground or bouncing his head off the hood.

After giving his testimony, Officer Wood called both backup officers. The first testified that when he arrived on the scene Mr. Youngblood was cursing and seemed upset at having been arrested. Colclasure then took the stand and recanted, without explanation, his earlier testimony that Officer Wood told him that he had "put [Youngblood] on the ground."

The jury returned a verdict for Officer Wood. Arguing that the verdict was against the manifest weight of the evidence, Mr. Youngblood moved for a new trial pursuant to Rule 59. The magistrate judge, before whom both parties consented to try the case, found "ample" evidence supporting the jury's verdict and Mr. Youngblood's injuries "insignificant." He therefore denied the motion.

■ On appeal Mr. Youngblood argues that because he basically complied with the officer's requests throughout the encounter with Officer Wood and because the handcuffs immobilized his hands *any* amount of force was excessive in affecting his arrest. He further contends that the magistrate judge did not adequately reweigh the evidence in this case to determine if the jury's verdict was contrary to its manifest weight, and that basic fairness demands that a new trial be granted.

None of these arguments warrant reversal. Mr. Youngblood must show that the magistrate judge abused his discretion in denying a new trial and, "as long as there is a reasonable basis in the record to support it," we "will not overturn a jury's verdict." *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir.2000). Furthermore, we will not second-guess credibility determinations, *see, e.g., Cent. States, Southeast & Southwest Areas Pension Fund v. Neiman*, 285 F.3d 587, 595 (7th Cir.2002), upon which much of this case turns.

■ Officer Wood was entitled to use only such force, viewed objectively, that was reasonably necessary to affect Mr. Youngblood's arrest. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Smith v. City of Chicago*, 242 F.3d 737, 743 (7th Cir.2001). The inquiry proceeds by considering the facts and the totality of the circumstances confronting Officer Wood at the time of the arrest. *Id.* (citation ommitted) Relevant considerations include the "severity of the crime at issue, whether the suspect

posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* We also considers "whether the citizen ... was interfering or attempting to interfere with the officer's execution of his or her duties." *Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir.2000).

The jury could reasonably have believed Officer Wood's version of events, as Mr. Youngblood presented no evidence conclusively undermining Officer Wood's account. Considering Officer Wood's version, it appears that the force used was reasonable. He was alone at night on a lonely stretch of country road, confronted by a belligerent and larger man who had been arrested on a weapons charge in the past. Though handcuffed when removed from his car, this large, belligerent man continued to yell at Officer Wood. Then, when Officer Wood placed himself in a vulnerable position by bending over and putting his head inside the car, the belligerent man attempted to take advantage of the situation and interfere with Officer Wood's execution of his duties by closing the door on the officer. Officer Wood countered the man's use of force with force of his own: he shoved the man into the car. Once he had regained control of the situation, Officer Wood ceased using force. We have held similar amounts of force used in an analogous situation reasonable. *See Smith,* 242 F.3d at 744–45 (after 12 block chase of traffic-law violator, police were reasonable to pull suspect from car, pin his arms behind his back, and slam him against car hood). Just as in *Smith,* Mr. Youngblood's actions during the arrest, and not his underlying crime, justified Officer Wood in using a higher degree of force than would ordinarily be necessary. And, again as in *Smith,* the amount of force Officer Wood claims to have used–a forceful shove into a car–"was not high, let alone excessive." *Id.; see also Bates v. Chesterfield County,*

*Va.,* 216 F.3d 367, 371–72 (4th Cir.2000) (no excessive force where suspect who had pushed, kicked, and spat at officers sustained bruising and scraping during arrest).

■ Mr. Youngblood contends that his handcuffed hands at the time of the arrest distinguish this case from *Smith* and make *any* amount of force used by Officer Wood excessive. He cites cases from other circuits for the unremarkable proposition that "in some circumstances no force is permitted because none is required." *See Kidd v. O'Neil,* 774 F.2d 1252, 1256–57 (4th Cir.1985); *Feemster v. Dehntjer,* 661 F.2d 87, 89 (8th Cir.1981) ("There is no occasion for the use of any force against a prisoner who quietly submits."). We have said as much in its own cases. *See, e.g., Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir.1996). But the rule is inapplicable to this case because the facts, construed in support of the jury's verdict, show that Mr. Youngblood was not submitting quietly during his encounter with Officer Wood but was instead yelling and actively interfering with the officer's performance of his duties. Although Mr. Youngblood claimed, and Officer Wood agreed, that Mr. Youngblood was not actively resisting at the *exact moment* of the arrest, i.e., the moment after the door shut on Wood, that fact does not help Mr. Youngblood's case. Police officers deal with fluid situations, *see, e.g., United States v. Swift,* 220 F.3d 502, 509 (7th Cir.2000), and we judge whether police acted reasonably in them according to the totality of the circumstances, not freeze-frames. Finally, Mr. Youngblood presents no caselaw support for his assertion that his handcuffed hands made it objectively unreasonable for any amount of force to be used to subdue him. Feet, too, can be weapons. *See, e.g., Bates,* 216 F.3d at 370 (autistic juvenile's kick to the groin incapacitated officer).

Although the jury seems to have disregarded or disbelieved substantial evidence that Officer Wood unnecessarily threw Mr. Youngblood to the ground and bounced his head off the hood, that evidence did not conclusively establish that Wood lied about his encounter with the Youngbloods, and the jury was entitled to reject some or all of it in favor of Officer Wood. *See EEOC v. G–K–G, Inc.,* 39 F.3d 740, 746 (7th Cir. 1994).

Mr. Youngblood's other arguments–that the magistrate judge did not adequately reweigh the evidence and that fairness demands he get a new trial–are unsupported and conclusory. We therefore AFFIRM the judgment for Wood.