David HABIGER, Plaintiff,

v.

CITY OF FARGO; Ann Alzheimer, Mike Kjera, Scott Stenerson, Mark Lykken, and Don Lawyer, in their official and individual capacities, Defendants.

Civ. No. A3–93–81.

United States District Court,
D. North Dakota,
Southeastern Division.

Jan. 23, 1995.

Richard D. Varriano, Moorhead, MN, for plaintiff.

Mike Miller, Solberg, Stewart, Miller, Johnson & Noack, Fargo, ND, for defendants.

## MEMORANDUM AND ORDER

KLEIN, United States Magistrate Judge.

On May 11, 1993, plaintiff David Habiger filed this civil action against defendants Ann Alzheimer, Todd Doale, Mike Kjera, Scott Stenerson, Todd Osmundson, Leo Rognlin, Donn Weaver, Paul Lies, Gordon Olson, Don Lawyer and the City of Fargo seeking redress for alleged violations arising out of plaintiff's arrest and imprisonment on October 31, 1991. Pursuant to a stipulation signed by both parties, this court dismissed the complaint and causes of action against defendants Todd Doale, Todd Osmundson, Donn Weaver, Paul Lies, Gordon Olson and Leo Rognlin. On August 8, 1994, this court granted plaintiff's motion to amend his complaint to name Mark Lykken as a defendant in this action. Plaintiff's amended complaint filed on September 15, 1994, sets forth six causes of action based on federal constitutional and state law theories. Pending before the court are plaintiff's motion to amend his complaint, plaintiff's motion for partial summary judgment, and defendants' motion for summary judgment.

## I. BACKGROUND

On October 28, 1991, the Honorable Lawrence A. Leclerc, Cass County District Court Judge, issued a temporary restraining order in the case of *Fargo Women's Health Organization, Inc., et al. v. Lambs of Christ, et al.*, Case No. 91–1953 (Cass County Dist. Ct. filed Oct. 28, 1991). The temporary restraining order prohibited pro-life demonstrators from conducting certain protest activities, including "going within 100 feet of the property line of [the Fargo Women's Health Organization clinic] during such times as they are open for business, except that one person may quietly and peacefully picket such facility, so long as that person does not interfere with the operations of said facility as provided herein." *Fargo Women's Health Organization, Inc., et al. v. Lambs of Christ, et al.*, Case No. 91–1953 at 3 (Cass County Dist. Ct. filed Oct. 28, 1991).[1] A red line was painted

---

1. The temporary restraining order provided, in pertinent part:

IT IS HEREBY ORDERED THAT YOU, Lambs of Christ; Focus on Fargo; Help and Caring Ministries; Community Praise Center; Darold Larson; Jody Clemens; Tim Lindgren; Kathy Beneda Lindgren; Chet Gallagher; Chris Venkelese; Ron Maxon; Operation Rescue; and all other individuals, associations, and organizations who's names or legal identities are otherwise unknown to Plaintiff's at this time, with whom you have conspired and acted in concert with to deprive Plaintiff's of their rights, are hereby enjoined from:

(a). trespassing on, sitting in, blocking, impeding or obstructing ingress or egress from FWHO facilities and the homes and residences of Plaintiffs Miks, Wicklund, and Bovard, as well as the homes and residences of any staff (paid or volunteer) or patients of FWHO.

(b). harassing, intimidating or physically abusing persons entering, leaving or working at FWHO facilities;

(c). obstructing the work of the persons located at FWHO facilities by any means—including singing, chanting, yelling, shouting, or screaming—that substantially interferes with the provision of medical services including counseling, with such facility;

(d). going within 100 feet of the property line of FWHO during such times as they are open for business, except that one person may quietly and peacefully picket such facility, so long as that person does not interfere with the operations of said facility as provided herein.

(e). following, harassing, photographing, videotaping, and intimidating, or speaking to staff and patients of FWHO who have indicated that they do not wish to be spoken to.

(f). distributing leaflets or brochures to any person who has indicated orally or by gesture

on the sidewalk 100 feet south of the Fargo Women's Health Organization clinic to mark the restricted area beyond which protesters were not permitted to pass.

On the morning of October 31, 1991, plaintiff David Habiger and approximately seventy-five other people participated at or near the Fargo Women's Health Organization [2] in a demonstration organized to protest this temporary restraining order. (Pl.'s Statement of Undisputed Material Facts at 1; Defs.' Statement of Undisputed Material Facts at 1). Habiger carried a sign that read "Abortion kills. The mother has to live with it." (Pl.'s Statement of Undisputed Material Facts at 1; Defs.' Statement of Undisputed Material Facts at 2). During the protest, Officers Anne Alzheimer, Mike Kjera, Scott Stenerson, Mark Lykken and Sergeant Don Lawyer were in front of the clinic, in various positions, acting in their capacity as police officers for the City of Fargo. (Id.; Id. at 2–3).

Shortly after he arrived at the scene of the demonstration, Habiger walked over to defendant Lawyer who was standing to the east of the clinic. (Id.). As Habiger approached him, Lawyer told Habiger that he could not cross the red line. (Id.). Habiger responded, "This is quite a country we got here. We're living on the edge of socialism. It's more like a communist regime." (Id.). Lawyer allegedly informed Habiger that he was violating the law by crossing the line · and asked Habiger to step back behind the line, but Habiger refused. (Defs.' Statement of Undisputed Material Facts at 3). Defendants contend that "since Habiger did not voluntarily go behind the line Sergeant Lawyer placed a hand on him to move him back. Habiger then allegedly told Sergeant Lawyer that he would 'beat knobs' on him if he didn't stay away from him. Habiger then returned to the other side of the line and Sergeant Lawyer walked away." [3] (Id.; Aff. Don Lawyer dated Nov. 8, 1994).

As the morning progressed, protestors crossed the red line marking the 100–foot protected zone. (Id.). The police officers at the scene formed lines and moved them back across the red line, informing the protestors that they were violating the temporary restraining order. · (Id.). However, many of the demonstrators ignored the officers' warning and walked across the line. (Id. at 3–4). Several of the protesters sat down on the sidewalk approximately eighty feet from the clinic. (Id. at 4). Eventually, the police officers arrested the protesters who refused to say behind the red line and charged them with violating the temporary restraining order issued by Judge Leclerc. (Id.).

About the time the police officers began arresting the protestors, Habiger began to loudly voice his disagreement with the offi-

that such person does not wish to receive such literature.

(g). inducing, encouraging, or directing others to take any of the actions described in paragraphs (a).–(f). above.

(h). That defendants are further directed to inform all persons who assemble to participate in any demonstration or "rescue" at FWHO, or similar action in concert or participation with defendants of the existence and contents of the Temporary Restraining Order governing the behaviors specified in paragraphs (a)–(f) above.

(i). That nothing in this Temporary Restraining Order shall be construed to limit defendant's lawful exercise of their legitimate First Amendment rights, except that reasonable restrictions on the time and manner of defendant's expression of their right to picket and demonstrate are included herein.

(j). That a contempt penalty for the first violation of the Order may be imposed on each defendant, and each agent of defendants, and each person acting in concert or participation with defendants with notice of this Temporary Restraining Order, who violates the terms of this Temporary Restraining Order and whose contempt is proven;

IT IS FURTHER ORDERED THAT THE Cass County Sheriff, Fargo Police Department, and any other Law Enforcement Authority may enforce this Order and may make arrests for the violation of this Order.

*Fargo Women's Health Organization, Inc., et al. v. Lambs of Christ, et al.,* Case No. 91–1953 at 3 (Cass County Dist.Ct. filed Oct. 28, 1991).

2. The Fargo Women's Health Organization is located at Eleven South Fourteenth Street, Fargo, North Dakota.

3. Habiger denies that he told Lawyer he would "beat knobs" on Lawyer if Lawyer did not stay away from him. (Aff. of David A. Habiger dated Oct. 7, 1994).

cers' conduct.[4] Lawyer repeatedly asked Habiger to quiet down. In response to Lawyer's requests, Habiger yelled:

> This is a dictatorship in this town. An evil city. You work for evil people that are killing human beings in there. You don't care. If you had any guts, you'd get out of that uniform and take a stand for life. What's that job mean to you? It ain't gonna mean nothing when your life is over. Take a stand for Jesus Christ. They're killin' human beings in there and nobody cares. And you stand there with that smirk on your face. When you stand before God, you're going to answer for it.

(Pl.'s Statement of Undisputed Material Facts at 2 (quoting Kirkeby Aff., exhibit 1, video tape)). As he yelled, spit came out of his mouth. Lawyer again asked him to quiet down. Lawyer's request promoted an even more emphatic response from Habiger:

> I can talk all I want. It's a free country. I'm behind the line. If you guys had any guts, you'd take them uniforms off and we'd all storm that place and close it down. They're killing children in there. Yet nobody does nothin'. Everybody stands back. They're killing children. This town's a dictatorship. It's a communistic—it's communistic. You're evil. You're all evil. They're standing up for murders. They're killing children that have a right to live. We had, we got a right to our lives. I don't care.

(*Id.*). At that point, defendant Lawyer told Habiger that he was under arrest and defendant Kjera grabbed the sign out of Habiger's hand. (*Id.*) Habiger asked, "For what?" Lawyer responded, "Court order." Habiger then stated, "For what? I'm just talking." Lawyer replied, "You're yelling too loud."

Next, Habiger stated, "I'm not even touching the line. You're not arresting me." Lawyer stated, "Yes, I am." Defendants Lawyer and Kjera then grabbed Habiger. Habiger repeated "No you're not—for what—no you're not." Habiger struggled and the three men fell to the ground. At that point, Officers Anne Alzheimer, Scott Stenerson and Mark Lykken began to assist in restraining Habiger.[5]

While he was on the ground Habiger complained of pain in his arm and some unnamed person called for an ambulance. When the ambulance arrived on the scene, Habiger climbed in the vehicle and medical personnel drove him to St. John's Hospital emergency room. After Habiger was treated, police officers took him to Cass County Jail where he was booked and confined to a cell overnight. The following day he was charged with disorderly conduct and preventing arrest. Habiger posted bond and the police officers released him a short time later. As a condition of his release from jail, Habiger was ordered to stay away from the Fargo Women's Health Organization.

On or about March 25, 1992, the charges against Habiger were dismissed. The Cass County State's Attorney's office had previously filed a motion of dismissal "for the reason [Habiger's] statements are protected by the First Amendment and there is otherwise insufficient evidence to prove the elements of the offenses beyond a reasonable doubt."

Fourteen months later, Habiger filed this lawsuit alleging that the defendant police officers' illegal arrest of Habiger deprived him of his constitutional rights and that defendants are liable for the injuries that he

---

**4.** Plaintiff contends that he objected to defendant Lawyer's request that the protestors be quiet. Lawyer allegedly told the demonstrators that they were talking too loud and that they would be arrested for violating the injunction because they were breaking the sound barrier. (Pl.'s Statement of Undisputed Material Facts at 2).

Defendant contends that Habiger moved across the line and began to shout. Lawyer allegedly asked Habiger to move back and quiet down. Habiger moved back behind the red line, but refused to quiet down. (Aff. of Don Lawyer dated Nov. 8, 1994, at 3).

**5.** Defendants claim that at least one of the police officers who tried to restrain Habiger suffered injuries as a result of Habiger's resistance to his arrest. (Defs.' Statement of Undisputed Material Facts at 6). Plaintiff contends that "[a]lthough in the course of wrestling Habiger to the ground one or more of the Defendant police officers was shoved or sustained minor injuries, Habiger neither purposely kicked nor hit any of the Defendant police officers before or during his arrest." (Pl.'s Statement of Undisputed Material Facts at 3 (citations omitted)).

suffered as a result of his arrest and imprisonment. Plaintiff's complaint also sets forth the following causes of action against defendants: defendants are liable for abuse of process, malicious prosecution, wrongful loss of freedom, false imprisonment and felonious assault. Additionally, plaintiff contends that defendant City of Fargo authorized, permitted and tolerated the Fargo Police Department's failure to adequately train, instruct, supervise and discipline members of the department and its failure to promulgate and enforce procedures and policies for the use of force consistent with the United States Constitution.

## II. *PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT*

On October 11, 1994, plaintiff David Habiger filed a motion to amend his complaint to restate his claims. Specifically Habiger seeks to amend his complaint "to separate pendent from federal claims and to specify the federal claims individually against the relevant defendants." (Pl.'s Memo. in Support of Mot. to Amend at 1–2). Plaintiff asserts that there is no change in the facts alleged in his first amended complaint except to clarify the plaintiff's injuries in paragraphs 22–24 and to state a claim against the City of Fargo in paragraphs 26–30. Defendants have not filed a response to this motion.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, this court may grant leave to amend the pleadings at its discretion; however, "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In addition, Rule 5(C) of the local rules provides that "failure to file a brief by the adverse party shall be deemed an admission that, in the opinion of counsel, the motion is well taken." U.S.Dist.Ct.R. 5(C). Since defendants failed to file a timely response to plaintiff's motion, this court will assume that the motion to amend is neither prejudicial to defendants nor offered for any improper purpose. Plaintiff's motion to amend his complaint is therefore granted.

## III. *SUMMARY JUDGMENT MOTIONS*

### A. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Westchem Agr. Chemicals, Inc. v. Ford Motor Co.,* 990 F.2d 426, 429 (8th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment ... against a party failing to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The court considering a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party who enjoys "the benefit of all reasonable inferences to be drawn from the facts." *Vacca v. Viacom Broadcasting of Missouri, Inc., et al.,* 875 F.2d 1337, 1339 (8th Cir.1989) (citation omitted). Summary judgment is improper if the court finds a genuine issue of material fact; however, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Commercial Union Insurance Co. v. Schmidt,* 967 F.2d 270, 271–72 (8th Cir.1992) (citation omitted). The issue is whether the evidence submitted presents a sufficient disagreement about the material facts so that submission to a jury is required, or whether the evidence is so one-sided that a party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

### B. MOTIONS FOR SUMMARY JUDGMENT

#### 1. Defendant Police Officers

Pursuant to 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, ... subjects, or causes to subjected, any citizen of

the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983 (1994). In his second amended complaint, plaintiff claims that the defendant police officers deprived him of his constitutional rights under the First, Fourth, and Fourteenth Amendments and are therefore liable for the resulting damages.

a. *First Amendment Right to Free Speech and Peaceable Assembly and Fourth Amendment Right to be Free from Unlawful Seizures:*

In this case, plaintiff asserts that he was unlawfully arrested for proclaiming his views on abortion. Although loud and emotional, plaintiff contends that his speech was protected by the First Amendment. Accordingly, plaintiff claims that defendants are liable for damages he suffered as a result of the violation of his First Amendment rights to free speech and peaceable assembly and his Fourth Amendment right to be free from unlawful seizures.

In response to plaintiff's allegations, defendants filed a motion for summary judgment arguing that they are entitled to qualified immunity from civil damages liability. This court need not discuss the merits of plaintiff's claims if it determines that defendants are entitled to qualified immunity. Therefore, it will address defendants' qualified immunity argument first.

■ In their briefs in support of their motions for summary judgment, both plaintiff and defendants focused their arguments on the disorderly conduct charges filed against Habiger. However, upon review of the undisputed evidence in this case, including the video tapes submitted by plaintiff and the temporary restraining order issued by the Cass County District Court, it is apparent to the court that Habiger's conduct did not prompt Lawyer to arrest him for disorderly conduct. Lawyer's justification for arresting Habiger was: "court order." In response to Lawyer's allegation, Habiger asked, "For what? I'm just talking." Lawyer clarified, "You're yelling too loud." Subsection (c) of the temporary restraining order issued by the Honorable Lawrence A. Leclerc, Cass County District Court Judge, provided:

IT IS HEREBY ORDERED THAT YOU, Lambs of Christ; Focus on Fargo; Help and Caring Ministries; Community Praise Center; Darold Larson; Jody Clemens; Tim Lindgren; Kathy Beneda Lindgren; Chet Gallagher; Chris Venkelese; Ron Maxon,; Operation Rescue; and all other individuals, associations, and organizations who's names or legal identities are otherwise unknown to Plaintiff's at this time, with whom you have conspired and acted in concert with to deprive Plaintiff's of their rights, are hereby enjoined from:

. . . . .

(c). obstructing the work of the persons located at FWHO facilities by any means—including singing, chanting, yelling, shouting, or screaming—that substantially interferes with the provision of medical services including counseling, with such facility;

*Fargo Women's Health Organization, Inc., et al. v. Lambs of Christ, et al.,* Case No. 91–1953 at 3 (Cass County Dist. Ct. filed Oct. 28, 1991). Thus, the court finds that Lawyer arrested Habiger for violating subsection (c) of the temporary restraining order.[6] The prosecutorial decision to charge him with disorderly conduct was formed later.

■ In deciding whether the proper focus of its qualified immunity ruling should be

---

6. In his deposition, Habiger testified that the temporary restraining order had been rescinded sometime on October 31, 1991, before he was arrested. (Depo. of David A. Habiger dated 12/17/93, at 46–47). The court allegedly revised the order and reissued it several days later. (*Id.*). Therefore, Habiger contends that the defendant police officers did not have authority to arrest protesters for violating the temporary restraining order. (*Id.*). The court found no evidence in the record indicating that the defendant police officers had notice of the court's decision to rescind the order prior to Habiger's arrest.

the temporary restraining order violation or the disorderly conduct charge, this court considered the law applied in Fourth Amendment seizure cases. In *Brinegar v. United States*, the United States Supreme Court noted: "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (citation omitted). The Eighth Circuit Court of Appeals in *Myers v. Morris* expanded on this principle, stating that

> "[i]n determining whether probable cause exists to make a warrantless arrest, a court will consider whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense. Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and experience. '[T]he probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' "

*Myers v. Morris*, 810 F.2d 1437, 1455 (8th Cir.1987) (quoting *Hannah v. City of Overland*, 795 F.2d 1385, 1389 (8th Cir.1986) (citations omitted)). These cases emphasize that this court must consider the circumstances confronting Lawyer at the time of the arrest in its determination of whether Lawyer had probable cause to arrest Habiger and whether Habiger's arrest was an unlawful seizure. Since review of the events leading to the arrest is crucial to this court's ruling on plaintiff's constitutional claims, the court finds that Lawyer's reasons for Habiger's arrest stated seconds after the seizure must be the focal point of this court's constitutional law and qualified immunity analysis. Accordingly, this court will consider defendants' qualified immunity arguments in light of Lawyer's stated justification for Habiger's arrest at the scene of the seizure instead of the disorderly conduct charge filed the following day.[7]

The purpose of the qualified immunity defense is to shield government officials who were exercising discretionary authority from civil damages liability, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 97 L.Ed.2d 523 (1987) (citations omitted); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). "[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038 (citation omitted); *Greiner v. City of Champlin*, 27 F.3d 1346, 1351 (8th Cir.1994).

In *Latimore v. Widseth*, the Eighth Circuit Court of Appeals summarized the requirements of the qualified immunity defense as follows:

> The availability of the defense to an official exercising discretionary authority in a particular case requires careful consideration of the established law at the time, the state actor's objective knowledge of that law, and the complained-of conduct. "Qualified immunity protects a government official

---

**7.** This court finds that the defendant police officers should not be held personally liable for the prosecutorial decision to charge Habiger with disorderly conduct. Police officers who mistakenly believe there is probable cause to arrest are nevertheless generally entitled to qualified immunity if a reasonable police officer could have believed that the arrest was lawful. *Arnott v. Mataya*, 995 F.2d 121, 123 (8th Cir.1993) ("even if probable cause is in fact absent, defendants may be entitled to qualified immunity") (citations omitted). Common sense dictates that they are entitled to the same protection from liability when the initial reason for the arrest was objectively reasonable, but the later prosecutorial decision to charge the arrestee differently was flawed. Accordingly, the court concludes that the defendant police officers should not be held liable for the decision to charge Habiger with a crime other than the offense named at the scene of the arrest.

from suit if, at the time of the challenged acts, it was not clearly established that those actions would violate clearly established law of which a reasonable person would have known."

*Latimore v. Widseth,* 7 F.3d 709, 712 (8th Cir.1993) (citation omitted). The elements of the defense stated in a three-part inquiry are: (1) Has the plaintiff asserted a violation of a constitutional right? (2) Was the constitutional right allegedly violated clearly established? (3) Are there genuine issues of material fact regarding whether a reasonable officer would have known that his or her alleged conduct infringed on plaintiff's constitutional right? *Foulks v. Cole County, MO.,* 991 F.2d 454, 456 (8th Cir.1993) (citations omitted).

■ In deciding whether defendants are entitled to qualified immunity, the first issue to resolve is whether plaintiffs have alleged a violation of a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). In this case, plaintiff contends that defendants violated his First and Fourth Amendment rights when the defendant police officers arrested him for expressing his views on abortion in a public forum.

Our nation is profoundly committed to the principle that debate on issues of public and social concern should be "uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). "The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Id.* at 269, 84 S.Ct. at 720 (citation omitted). These principles hold true even when a speaker's expression provides a hostile audience reaction.

[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and prepossesses for acceptance of an idea. That is why freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. *Terminiello v. Chicago,* 337 U.S. 1, 4–5, 69 S.Ct. 894, 895–96, 93 L.Ed. 1131 (1949) (citations omitted).

■ Furthermore, abusive, vulgar, derisive, and provocative speech is protected when directed at a police officer. *Lewis v. New Orleans,* 415 U.S. 130, 133–34, 94 S.Ct. 970, 972–73, 39 L.Ed.2d 214 (1974); *Houston v. Hill,* 482 U.S. 451, 462–63, 107 S.Ct. 2502, 2509–10, 96 L.Ed.2d 398 (1987). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston,* 482 U.S. at 462–63, 107 S.Ct. at 2509–10 (1987). "It is ... fundamental that a lawful arrest may not ensue where the arrestee is merely exercising his First Amendment rights." *Gainor v. Rogers,* 973 F.2d 1379, 1387 (8th Cir.1992) (citations omitted). Accordingly, the court finds that plaintiff has sufficiently alleged a violation of his constitutional rights.

■ The next issue is whether plaintiff's constitutional right to loudly proclaim his views on abortion was clearly established. For purposes of qualified immunity, a right is clearly established if a reasonable official would understand that his or her conduct violates that particular right because the contours of the right are sufficiently clear. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The court must not only consider whether the right allegedly violated was clearly established, but must also consider whether the right was clearly established in these particular circumstances. *Id.* at 640–42, 107 S.Ct. at 3039–40. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness

must be apparent." *Id.; Jones v. Coonce,* 7 F.3d 1359, 1362 (8th Cir.1993) (stating that it is not necessary for a litigant to demonstrate precise factual correspondence with precedents in order to prove that the law was clearly established for qualified immunity purposes). For the purposes of this analysis, the court will assume, without deciding, that Habiger's right to loudly express his views on abortion in a public forum was clearly established in the absence of the temporary restraining order issues by Judge Leclerc.[8]

The question then becomes, whether a reasonable officer could have believed that plaintiff's arrest was lawful, in light of clearly established law and the information the defendant police officers possessed at the time of the arrest, including the recent issuance of the temporary restraining order. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Gainor,* 973 F.2d at 1384. The latter phase of this test allows room for good faith mistake since the officer's "conduct must be measured in terms of the belief of a reasonable officer based upon the facts then available to the officer." *Gainor,* 973 F.2d at 1384.

On the morning of October 31, 1994, defendant Lawyer was assigned the task of patrolling the area surrounding the Women's Health Organization clinic. (Aff. of Don Lawyer dated 11/8/94 at 1). Prior to his arrival at the clinic, he was informed about the temporary restraining order issued by Judge Leclerc. (Aff. of Don Lawyer dated 11/8/94). The order provided the Cass County Sheriff, the Fargo Police Department, and any other law enforcement authority, with the power to enforce the temporary restraining order and to make arrests for the violation of the order. *Fargo Women's Health Organization, Inc., et al. v. Lambs of Christ, et al.,* Case No. 91–1953 at 4 (Cass County Dist. Ct. filed Oct. 28, 1991).

The court finds that a reasonable police officer in the defendants' position could have assumed that the order was facially valid and that it superseded any inconsistent training the officer had received and knowledge the officer had previously acquired regarding First Amendment protections. The temporary restraining order, in effect, modified the reasonable police officer's understanding of clearly established law. In light of the temporary nature of Judge Leclerc's order and the fact that the Women's Health Organization clinic in Fargo had been the target of many volatile demonstrations throughout the spring and summer of 1991,[9] reasonable police officers could have assumed that the order was a necessary measure imposed to deal with exigent circumstances. The applicability of otherwise clearly established law to the circumstances in this case was not evident. *See Greiner v. City of Champlin,* 27 F.3d 1346, 1351 (8th Cir.1994) ("An official loses immunity if, first, the law he violated was clearly established at the time of the violation, and second, the applicability of the law to his particular action was evident.").

Even if the police officers tasked with enforcing the temporary restraining order were unsure about the constitutionality of the order,[10] they had a right to resolve their uncertainty in favor of arresting Habiger. "Law-enforcement officers should not, on pain of having to pay damages out of their own pockets, be required to anticipate how appellate judges will apply maxims of constitutional adjudication about which even those judges sometimes disagree.... '[I]t would be unworkable for the officers to await interpretations from federal appellate judges rendered long after the orders were executed to learn whether they will be civilly liable for performing an assigned duty.'" *McCurry, et al. v. Tesch,* 824 F.2d 638, 642 (8th Cir.1987). Thus, if a reasonable police officer could have believed that Habiger's yelling was substantially interfering with the operation of the

---

**8.** The court finds it unnecessary to decide whether Habiger's right to shout his views on abortion were clearly established despite the temporary restraining order because it concludes that a reasonable police officer would not have known that the arrest would violate plaintiff's rights under the circumstances of this case.

**9.** *See* Aff. of Ronald Raftevold dated 11/11/94, at 2.

**10.** Since the order was issued only a few days before Habiger was arrested, the constitutional validity of the order had not been tested.

clinic, the police officers responsible for Habiger's seizure are entitled to qualified immunity, even if enforcement of the temporary restraining order was later found to be a violation of plaintiff's constitutional right to free speech and peaceable assembly. *Gainor v. Rogers*, 973 F.2d 1379, 1382–84 (8th Cir. 1992).

The next question is whether the defendant police officers could have reasonably believed that Habiger's yelling substantially interfered with clinic operations. The temporary restraining order stated that the defendants named in the order and all other demonstrators who were informed of the contents of the order [11] were enjoined from obstructing the work of people at the Fargo Women's Health Organization by any means that substantially interferes with the provision of medical services, including yelling, shouting or screaming. *Fargo Women's Health Organization, Inc., et al. v. Lambs of Christ, et al.*, Case No. 91–1953 at 3 (Cass County Dist. Ct. filed Oct. 28, 1991). It is an undisputed fact that the manner in which Habiger was proclaiming his beliefs could be described as yelling, shouting or screaming. (*See* Kirkeby Aff., Exhibit 1, video tape). A reasonable police officer fearing a magnification of the volatile situation could have believed that Habiger was governed by the temporary restraining order and that Habiger's speech, delivered while many of his fellow demonstrators were being arrested for violating the court order, substantially interfered with clinic operations.

The court recognizes that the question of whether Habiger's passionate speech substantially interfered with clinic operations is subject to debate, but notes that the police officers are entitled to immunity if there is any reasonable basis to conclude that Habiger violated the order. *Cross v. City of Des Moines*, 965 F.2d 629, 632 (8th Cir.1992) ("If a case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is any reasonable basis to

conclude that probable cause existed." (citations omitted)). "The issue for immunity purposes is not probable cause in fact but 'arguable' probable cause." *Myers v. Morris*, 810 F.2d 1437, 1455 (8th Cir.1987) (citation omitted). "Thus, even if probable cause is in fact absent, defendants may be entitled to qualified immunity." *Arnott v. Mataya*, 995 F.2d 121, 123 (8th·Cir.1993). In a case in which the defense of qualified immunity is raised in response to an allegation of illegal arrest under the Fourth Amendment, the "focal issue is the objective reasonableness of the officer making the arrest, even though probable cause to arrest is lacking." *Gainor v. Rogers*, 973 F.2d 1379, 1382 (8th Cir.1992). Accordingly, the court finds that a reasonable police officer could have believed that Habiger's arrest was lawful, in light of the court order and the information possessed by the defendant police officers on the morning of plaintiff's arrest. Defendants' motion for summary judgment on the first and second causes of action set forth in plaintiff's second amended complaint is granted. Plaintiff's motion for summary judgment of his first and second causes of action is denied.

b. *Fourth Amendment Right to be Free from Unjustified and Excessive Use of Force:*

■ Plaintiff alleges that the defendant police officers "willfully, knowingly, negligently and with complete and deliberate indifference for Plaintiff's constitutional rights and with specific intent deprived Plaintiff of his Fourth Amendment right to be free from the unjustified and excessive use of force." (Pl.'s Second Amended Compl. at 7). Specifically, plaintiff argues that the force used by defendant police officers to effect Habiger's arrest was unreasonable under the circumstances confronting the officers at the time; and therefore, defendants are liable for the damages suffered by plaintiff as a result of the deprivation of his Fourth Amendment rights. In support of this argument, plaintiff contends that his arrest was unlawful and

11. In his deposition, Habiger testified that he was a member of Christians in Action, formerly titled Focus in Fargo, which is one of the organizations named as a defendant in the temporary restraining order issued by Judge Leclerc.

(Depo. of David Habiger dated 12/17/93, at 8). Habiger also testified that he received notice of the contents of the order prior to arriving at the demonstration at the Fargo Women's Health Organization on October 31, 1991. (*Id.* at 6–10).

that "no degree of force is reasonable in making a *false* arrest." (Br. in Support of Pl.'s Mot. for Partial Summ. J. at 22).

This court is not convinced by plaintiff's argument. First, the binding precedent cited by plaintiff does not support the proposition that any force used in accomplishing an unlawful arrest is unreasonable *per se.*[12] Second, plaintiff's contention does not comport with the Fourth Amendment excessive force standard set forth in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The *Graham* Court held:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396, 109 S.Ct. at 1871. Courts applying this standard must consider the totality of circumstances in each case. No one factor is recognized as outcome determinative in all situations.[13] While it may be true that courts applying the *Graham* standard to unlawful arrest situations are more likely to find that a police officer's use of force was unreasonable, force used to effect an arrest

---

12. In *Foster v. Metropolitan Airports Commission,* the Eighth Circuit Court of Appeals affirmed the "district court's decision granting summary judgment for defendants on plaintiffs' claim of unlawful arrest." *Foster v. Metropolitan Airports Commission,* 914 F.2d 1076, 1081 (8th Cir.1990). Thus, the court did not find that plaintiff's arrest was unlawful. Accordingly, this decision does not support the proposition that using any degree of force to effect an unlawful or false arrest is unreasonable *per se.* The case simply confirms the proposition that some degree of force may be used in effecting a lawful arrest. *Id.* at 1079–83; *Krueger v. Fuhr,* 991 F.2d 435 (8th Cir.1993).

In addition, the *Foster* court's citation to *Bauer v. Norris,* 713 F.2d 408, 413 (8th Cir.1983) does not further plaintiff's argument. The *Bauer* court did not rule that using force to effect an unlawful arrest was unreasonable; it merely affirmed a jury verdict finding that either use of force *under the circumstances of the case* was unreasonable or that the arresting officer used force for some improper purpose. *Bauer v. Norris,* 713 F.2d 408, 413 (8th Cir.1983) (citation omitted). Furthermore, the *Bauer* court clarified that the use of force was reasonable only if used to overcome physical resistance or threatened force. *Id.* This principle (articulated before *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), was issued) was not conditioned on the legality of the arrest.

Plaintiff also contends that *McLaurin v. Prater,* 30 F.3d 982 (8th Cir.1994), lends support to his argument that no force is justified in making an unlawful arrest. The court in *McLaurin* ruled on an Eighth Amendment excessive force claim. Unlike the Fourth Amendment objective standard, the Eighth Amendment excessive force standard contains a subjective element. Courts consider the motivation of the defendant when ruling on Eighth Amendment excessive force claims. Therefore, Eighth Amendment excessive force cases are not analogous. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989) (noting that the Eighth Amendment excessive force test, "which requires consideration of whether the individual officers acted in 'good faith' or 'maliciously and sadistically for the very purpose of causing harm,' is incompatible with a proper Fourth Amendment analysis.").

Plaintiff also cites *Duncan v. Storie,* 869 F.2d 1100 (8th Cir.1989) (legality of arrest was a question of fact in dispute), *United States v. Harrison,* 671 F.2d 1159 (8th Cir.1982) (lawful arrest), and *Agee v. Hickman,* 490 F.2d 210 (8th Cir.1974) (legality of arrest not discussed) in support of his proposition. However, in each of these cases, the Eighth Circuit Court of Appeals applied a subjective excessive force standard. The cases all pre-date the United States Supreme Court decision in *Graham v. Connor.* Accordingly, the court finds that cases cited by plaintiff do not support his proposition that "no degree of force is reasonable in making a false arrest."

13. The court notes that legality of an arrest was not one of the factors specifically mentioned by the *Graham* Court. *See Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

that is later ruled unlawful is not unreasonable *per se.* Although the legality of the arrest may be a factor to consider in determining whether an officer's use of force was reasonable, it is not the sole factor. Accordingly, the court declines to accept plaintiff's suggestion that no force is justified in making an unlawful arrest.

■ The next issue is whether the undisputed facts in this case lead, as a matter of law, to the conclusion that the defendants' use of force was either reasonable or unreasonable when the situation is analyzed in light of the objective reasonableness standard articulated in *Graham v. Connor.*[14] Plaintiff argues that there is no evidence that he posed an immediate threat to the safety of the police officers or to others. (Br. in Supp. of Mot. for Partial Summ. J. at 22). In addition, plaintiff contends that "[h]e was not inciting anyone to immediate acts of violence, nor had he committed or threatened to commit any acts of violence at the time of his arrest."[15] (*Id.*). Plaintiff acknowledges that he resisted arrest by backing away from the police officers, but asserts that his conduct did not justify the degree of force used by defendant police officers. (*Id.* at 23). Furthermore, plaintiff argues that the fact that Habiger sustained extensive injuries as the result of the joint effort of five police officers suggests that unreasonable force was used to effect his arrest. (*Id.* at 23–25; Depo. of D.P. Van Blaricom, litigation consultant testifying on behalf of plaintiff, dated 5/26/94, at 25–26, 31–33).

■ Conversely, defendants argue that the force used to effect Habiger's arrest was not excessive.[16] An expert witness testifying on behalf of defendants opined:

> Habiger's actions constituted active resistance and physical assault upon the officers. Officers had cause, based upon his earlier verbal threats to "beat knobs on their heads"[17] and his combative posture to assess that Habiger was a threat. Sgt. Lawyer also had previous contact and knowledge of Habiger's mental state which gave him more information to assess threat potential. Also Mr. Habiger is a large individual and officer/subject factors demanded a multiple officer team effort response as did the special circumstance of the potentially threatening large crowd who were sympathetic to Habiger....

(Aff. of Robert Willis dated 11/7/94, at 3). In addition, defendant Lawyer testified that he was concerned Habiger would become violent before the arrest and that Habiger physically resisted the police officers' effort to restrain him after the arrest. (Aff. of Don Lawyer dated 11/8/94, at 4–5).

Upon review of the briefs, documentation and video tapes filed in this case, the court finds that the evidence submitted presents a genuine factual dispute requiring a jury to assess the credibility of witnesses and to resolve inconsistencies in the evidence. The substantially different conclusions reached by the parties emphasize the existence of a genuine issue of fact. The court finds that a

14. Defendants do not argue that they are entitled to qualified immunity from plaintiff's Fourth Amendment excessive force claim. Therefore, the court will not consider the issue in the context of the cross motions for summary judgment.

15. In their statement of undisputed material facts, defendants contend that Habiger threatened to "beat knobs" on Lawyer if he did not stay away from Habiger. (Defs.' Statement of Undisputed Material Facts at 3). Additionally, the police statement prepared by defendant Lawyer indicates that Habiger shoved Lawyer before Lawyer arrested Habiger.

Habiger denies that he told Lawyer he would "beat knobs" on Lawyer if Lawyer did not stay away from him. (Aff. of David A. Habiger dated 10/7/94). Habiger also denies that he shoved Lawyer before he was arrested. (Depo. of David A. Habiger dated 12/17/93, at 35).

16. In support of their argument, defendants cite *Morales v. Ramirez,* 906 F.2d 784 (1st Cir.1990) for the proposition that in order for a constitutional violation to be actionable, it must "shock the conscience" of the court. The plaintiff in *Morales* filed a *Bivens*-type lawsuit against federal agents for malicious prosecution. *Id.* at 786. She did not allege an excessive force claim under the Fourth Amendment. Her claims were primarily Fourteenth Amendment due process claims. Furthermore, the *Morales* court neither cited *Graham v. Connor* nor discussed the *Graham* Fourth Amendment excessive force standard in its analysis. Accordingly, this court declines defendants' invitation to apply the "shock the conscience" standard to the circumstances of this case.

17. *See supra* note 15.

reasonable jury could return a verdict for either party. *Westchem Agr. Chemicals, Inc. v. Ford Motor Co.,* 990 F.2d 426, 429 (8th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)) ("A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.' "). Accordingly, the court finds that the alleged use of excessive force is a proper issue for the jury to decide. *Duncan v. Storie,* 869 F.2d 1100, 1103 (8th Cir.1989) ("The alleged use of excessive force is generally an issue of fact."); *Kelly v. Bender,* 23 F.3d 1328, 1331 (8th Cir.1994) (finding that a genuine issue of fact existed as to the reasonableness of the force used in effecting an arrest). Therefore, plaintiff's motion for summary judgment on the third cause of action set forth in his second amended complaint is denied. Defendants' motion for summary on the issue of excessive use of force is also denied.

c. *State Law Claims:* [18]

### A. FALSE IMPRISONMENT, FALSE ARREST AND MALICIOUS PROSECUTION

■ In his complaint, plaintiff alleges that defendants are liable for false arrest, false imprisonment and malicious prosecution under the laws of the State of North Dakota.

Defendants filed a motion for summary judgment arguing that pursuant to section 32–12.1–03(3) of the North Dakota Century Code they are immune from liability for plaintiff's state law claims because the Lawyer's decision to arrest Habiger was discretionary.

Section 32–12.1–03(3)(c) sets forth the discretionary function exception to liability of a political subdivision.[19] The North Dakota Supreme Court has interpreted this subsection to provide political subdivisions and their employees immunity from liability for allegations of negligence in the exercise of a discretionary function. *Sande v. City of Grand Forks,* 269 N.W.2d 93, 98 (N.D.1978); *McLain v. Midway Township,* 326 N.W.2d 196, 199 (N.D.1982).

In response to defendants' immunity argument, plaintiff notes that police officers are not granted discretion to disregard the United States Constitution. Habiger also asserts that Lawyer was not authorized to arrest him for conduct protected by the Constitution.

■ The court is not persuaded by plaintiff's arguments. Plaintiff's state law claims and federal constitutional claims must be analyzed separately. A plaintiff who alleges both federal and state law violations is not entitled to a state law remedy simply by virtue of the fact that a court determines that

---

18. Pursuant to 28 U.S.C. § 1367(a) and the Eighth Circuit Court of Appeals decision in *McLaurin v. Prater,* 30 F.3d 982, 985 (8th Cir. 1994), this court *must* accept supplemental jurisdiction over the state law claims in this action unless:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (1994). Since this court concludes that none of the exceptions listed above apply to the circumstances of this case, it must accept jurisdiction over the state law claims alleged by plaintiffs.

19. Section 32–12.1–03(3) provides, in pertinent part:

3. A political subdivision is not liable for any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employees, whether or not the discretion involved be abused. Specifically, a political subdivision or an employee thereof is not liable for any claim which results from:

. . . .

c. The decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation, or resolve under which the discretionary function or duty is performed is valid or invalid.

N.D.Cent.Code § 32–12.1–03 (Supp.1993).

the defendant violated the plaintiff's constitutional rights. Plaintiff still retains the burden of proving the elements of his or her state law claim. The defendant police officers did not suggest or imply that state law permits police officers to disregard the Constitution. Instead, defendants argue that they are immune from plaintiff's *state law* claims of false arrest, false imprisonment and malicious prosecution unless plaintiff proves that defendants' acts or omissions constitute reckless or grossly negligent conduct, or willful or wanton misconduct. N.D.Cent.Code § 32–12.1–04(3) (Supp.1993).[20]

Plaintiffs have not proffered any evidence of malicious intent, reckless or grossly negligent conduct, or willful or wanton conduct relating to Lawyer's decision to arrest Habiger. Mere allegations of malicious conduct are not enough to withstand defendants' motion for summary judgment. Fed.R.Civ.Pro. 56(e). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment . . . against a party failing to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Therefore, defendants are immune from liability for plaintiffs' state law claims of false imprisonment, false arrest and malicious prosecution, regardless of whether the defendant police officers were negligent or whether they exercised due care, provided that defendants can demonstrate that Lawyer's decision to arrest plaintiff was a discretionary function.[21]

Upon review of the circumstances of this case and the factors set forth in *Loran v. Iszler*, 373 N.W.2d 870, 873 (N.D.1985) (quoting Comment f to § 895D, Restatement (Second) of Torts), the court finds that Lawyer's conclusion that there was probable cause to arrest plaintiff and his consequent decision to arrest Habiger was discretionary. There is a substantial amount of independent judgment required to make a decision to arrest or to conclude whether probable cause exists. *See Richmond v. Haney*, 480 N.W.2d 751, 759 (N.D.1992). Accordingly, defendants are immune from liability for plaintiff's state law claims of malicious prosecution, false arrest and false imprisonment under section 32–12.1–03 of the North Dakota Century Code. Defendants' motion for summary judgment on these state law claims is therefore granted. Plaintiff's motion for summary judgment on his state law claims of false arrest and false imprisonment is denied.

### B. ASSAULT AND BATTERY

■ In his complaint, plaintiff alleges that defendants are liable for assault and battery under the laws of the State of North Dakota. Habiger contends that the evidence submitted in support of his Fourth Amendment excessive force claim is also sufficient to prove state law claims of assault and battery. In response to plaintiff's arguments, defendants assert that they used only necessary and reasonable force to effect Habiger's arrest. Accordingly, they argue that sum-

---

**20.** Section 32–12.1–04(3) of the North Dakota Century Code provides:

> 3. No employee may be held liable in the employee's personal capacity for acts or omissions of the employee occurring within the scope of the employee's employment unless the acts or omissions constitute reckless or grossly negligent conduct, or willful or wanton misconduct. An employee may be personally liable for money damages for injuries when the injuries are proximately caused by the negligence, wrongful act, or omission of the employee acting outside the scope of the employee's employment or office. The plaintiff in such an action bears the burden of proof to show by clear and convincing evidence that the employee was either acting outside the scope of the employee's employment or office or the employee was acting within the scope of employment in a reckless, grossly negligent, or will-

ful, or wanton manner. Employees may be liable for punitive or exemplary damages. The extent to which an employee may be personally liable pursuant to this section and whether the employee was acting within the scope of employment or office shall be specifically stated in a final judgment.

N.D.Cent.Code § 32–12.1–04(3) (Supp.1993).

**21.** Legislative history supports this interpretation of section 32–12.1–03. During the discussion of house bill 1071, the bill which lead to the enactment of chapter 32–12.1, Mr. Russ Myhre of the North Dakota Legislative Council stated that "generally, state or political subdivision officers and employees who exercise discretionary functions are immune from liability for their unintentional fault." Senate Judiciary Committee Discussion of House Bill 1071 at 2 (March 7, 1977).

mary judgment should be entered against plaintiff on his assault and battery causes of action.

■ Pursuant to North Dakota law, a peace officer lawfully attempting to take a violator of law into custody is under no obligation to retreat or retire to avoid the necessity of using force, ... the presumption is always in favor of the correct performance of his duty, and ... every intendment will be made to support such presumption. The conduct of an officer must be weighed in the light of the circumstances under which he acted and not by the incidental results thereof.

*Wall v. Zeeb*, 153 N.W.2d 779, 786 (N.D.1967) (quoting *Schell v. Collis*, 83 N.W.2d 422, 426 (N.D.1957)); *Jones v. Ahlberg*, 489 N.W.2d 576, 580 (N.D.1992). *See* N.D.Cent. § 29–06–13 (1991) ("If, after notice of intention to arrest the defendant, he either flees or forcibly resists, the officer may use all necessary means to effect the arrest."). The presumption that the police officer acted in good faith continues until it is overcome by evidence to the contrary. *Schell,* 83 N.W.2d at 426. Thus, plaintiff has the burden of proving that the force used by the defendant police officers to effect Habiger's arrest was unnecessary. The fact that the officers' force resulted in injury more serious than contemplated or intended by the officer is not controlling, but rather the circumstances of the assault must control. *Schell v. Collis,* 83 N.W.2d 422, 426–27 (N.D.1957).

Like its analysis of plaintiff's Fourth Amendment excessive force claim, the court finds that the evidence submitted presents a genuine factual dispute requiring a jury to assess the credibility of witnesses and to resolve inconsistencies in the evidence. (See the court's analysis of plaintiff's excessive force claims, *supra* section III.B.1.b). A reasonable jury could return a verdict for either party. (*Id.*).[22] Accordingly, both plaintiff's and defendants' motions for summary judgment on plaintiff's assault and battery state law causes of action are denied.

### 4. *Punitive Damages:*

■ Plaintiff's prayer for relief includes a demand for punitive damages against the defendant police officers.[23] In response to this demand, defendants argue that the facts of this case do not justify an award of punitive damages against the arresting officers. Accordingly, defendants request that punitive damages be stricken from this proceeding. (Br. in Support of Defs.' Mot. for Summ. J. at 21). Plaintiff did not respond to defendants' request to strike punitive damages.

"Punitive damages may be awarded in a section 1983 action when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involved reckless or callous indifference to the federally protected rights of others.'" *Duncan v. Wells,* 23 F.3d 1322, 1324 (8th Cir.1994). "[W]hen the defendant has been guilty by clear and convincing evidence of oppression, fraud, or malice, actual or presumed, the court or jury, in addition to actual damages may give damages for the sake of example and by way of punishing the defendant." N.D.Cent.Code § 32–03.2–11 (Supp.1993).

Contrary to defendants' argument, the court finds that there is evidence to support plaintiff's punitive damages claim. The court finds that reasonable jurors could conclude that the officers' conduct was justified, negli-

22. Although defendants did not argue that they are entitled to immunity from plaintiff's assault and battery claims under section 32–12.1–03(3) of the North Dakota Century Code, the court finds it necessary to consider the issue. Section 32–12.1–03(3) provides public employees immunity from liability for their negligent acts or omissions. N.D.Cent.Code § 32–12.1–03(3) (Supp.1993). However, section 32–12.1–04(3) states that public employees may be held personally liable if their acts or omissions constitute reckless or grossly negligent conduct, or willful or wanton misconduct. N.D.Cent.Code § 32–12.1–04(3) (Supp.1993). The court finds that reasonable jurors could conclude that the officers' conduct was justified, negligent, reckless or grossly negligent. Since the officers' conduct is a material issue of fact in dispute, the court finds that summary judgment is inappropriate.

23. Although a political subdivision may not be held liable for punitive damages, employees of a political subdivision may be held liable for punitive or exemplary damages under state law. N.D.Cent.Code §§ 32–12.1–03(2) & 32–12.1–04(3) (Supp.1993).

gent, reckless or grossly negligent or willful. Since the officers' conduct is in dispute, the court finds that rejecting plaintiff's request for punitive damages on summary judgment is improper.

This ruling does not necessarily mean that the plaintiff's punitive damages claim will reach the jury. In August of 1992, this court implemented a bifurcated trial procedure for punitive damages claims that applies in all jury cases. *See Nereson v. Zurich Ins. Co., et al.,* Civ. No. A3–91–72, 1992 WL 212233 (D.N.D. Aug. 20, 1992). During the trial of the compensatory damages claims, the parties will not mention or introduce evidence on punitive damages. If the jury returns a verdict awarding compensatory damages to the plaintiff, the court will determine whether there is sufficient basis to submit the punitive damages claim to the jury. If the court finds that the claim has no merit, evidence on the claim will never be presented to the jury. But, if the court determines that a reasonable jury could find oppressive or malicious action by clear and convincing evidence, presentation of the claim will proceed immediately to the same jury panel. Accordingly, defendants' request to strike plaintiff's punitive damages claim is denied.

## 2. Defendant City of Fargo

██ In his second amended complaint, plaintiff alleges that defendant City of Fargo "under color of law willfully, knowingly, negligently and with complete deliberate indifference for Plaintiff's rights, authorized, permitted and tolerated by custom, policy or practice the Fargo Police Department's failure adequately to train, instruct, supervise and discipline members of the department to recognize and respect the First Amendment rights of the public." (Pl.'s Second Amended Compl. at 7–8). Plaintiff also alleges that the City of Fargo's acts and omissions proximately caused the deprivation of plaintiff's constitutionally protected right to freedom of speech and peaceable assembly and proximately caused plaintiff's unlawful arrest. (*Id.*)

On October 11, 1994, plaintiff filed a partial motion for summary judgment on his claims against the City of Fargo asserting that the city is liable, as a matter of law, for the Fargo Police Department's failure to train, instruct, supervise and discipline. Plaintiff's summary judgment arguments are based almost entirely on *Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) and its progeny.

In *Canton,* the United States Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. at 1204 (footnote omitted). The Court also ruled that "for liability to attach in this circumstance the identified deficiency in the city's training program must be closely related to the ultimate injury." *Id.* at 391, 109 S.Ct. at 1206. Therefore, in this case, plaintiff must prove that the City of Fargo's failure to train, supervise and discipline the defendant police officers actually caused their indifference to Habiger's First and Fourth Amendment rights. *See Id.* In deciding whether plaintiff has met his burden of proof, this court must ask: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id.*

██ The court finds that plaintiff has failed to make a showing sufficient to establish that the City of Fargo's policies were the "moving force" behind the alleged constitutional violations. *Id.* at 389, 109 S.Ct. at 1205 (citations omitted). In its discussion of qualified immunity above, the court concluded:

[A] reasonable police officer in the defendants' position could have assumed that the order was facially valid and that it superseded any inconsistent training the officer had received and knowledge the officer had previously acquired regarding First Amendment projections. The temporary restraining order, in effect, modified the reasonable police officer's understanding of clearly established law. In light of the temporary nature of Judge Leclerc's order and the fact that the Women's Health Organization clinic in Fargo had been the target of many volatile demonstrations throughout the summer of

1991, reasonable police officers could have assumed that the order was a necessary measure imposed to deal with exigent circumstances. The applicability of otherwise clearly established law to the circumstances in this case was not evident. (*See supra*, section III.B.1.a). Since the temporary restraining order modified the police officers' understanding of First Amendment principles and essentially superseded any training the officers had received, the court finds that inadequate training was not the proximate cause of plaintiff's alleged constitutional injury. Additional specialized training on First Amendment protections would not have influenced a reasonable police officer's decision to arrest plaintiff for violating the temporary restraining order. Furthermore, since the order was issued only a few days before Habiger's arrest, there was no time to train the police officers about the constitutional intricacies potentially involved with enforcing the order. In addition, the court finds that, like the police officers, the city could rightfully rely on the validity of the temporary order issued by Judge Leclerc. Municipalities do not have a duty to anticipate how appellate judges will apply maxims of constitutional adjudication and then provide training in accordance with potential theories. Accordingly, the court finds that no reasonable jury could conclude that the City of Fargo's alleged failure to train, supervise or discipline its employees was the proximate cause of plaintiff's injuries. Therefore, defendants' motion for summary judgment on plaintiff's fourth and fifth causes of action is granted. Plaintiff's motion for summary judgment on his First Amendment and Fourth Amendment unlawful seizure claims is denied.

■ Next, plaintiff argues that he is entitled to judgment as a matter of law on his Fourth Amendment excessive force claims. Plaintiff alleges that the City of Fargo tolerated the Fargo Police Department's failure to adequately train, instruct, supervise and discipline members of the department about the unreasonable use of force. The City also allegedly tolerated the department's failure to promulgate and enforce procedures and policies for the use of force consistent with the Constitution. In addition, plaintiff contends that through policy, practice and custom, defendant City of Fargo permitted the use of unreasonable force. These actions allegedly deprived plaintiff of his constitutional right to be free from the excessive use of force.

In support of his allegations, plaintiff claims that defendant City of Fargo provided no specific training in the constitutional limitations on the use of force. Plaintiff also contends that the instruction the defendant police officers received in basic training was inadequate. (Aff. of D.P. Van Blaricom dated 8/24/94, at 5; Depo. of D.P. Van Blaricom dated 5/26/94, at 26–27). In addition, plaintiff argues that the defendant police officers used an inappropriate level of force to restrain Habiger after his arrest. (Depo. of D.P. Van Blaricom dated 5/26/94, at 26–31). Further, plaintiff alleges that the defendant officers' supervisors failed to comply with specific departmental reporting requirements and procedures for cases involving the use of force and that this omission illustrates a deficiency in training, supervision and discipline. (Aff. of Richard D. Varriano dated 10/8/94, Ex. P and M).

In response to plaintiff's arguments, the City claims that Fargo police officers are adequately trained to handle protests, such as the demonstration in front of the Women's Health Organization clinic on October 31, 1991. (Aff. of Robert Willis dated 11/7/94, at 4–5). Specifically, the City contends that the officers' training included class room training at the police academy, departmental training on the use of force and on-the-job training. (*Id.*; Aff. of Ronald Raftevold dated 11/11/94, at 1–2). The City of Fargo also argues that the defendant officers' behavior on October 31, 1991, demonstrates that the officers were properly trained and supervised. (Aff. of Robert Willis dated 11/7/94, at 1–6; Aff. of Ronald Raftevold dated 1/11/94, at 1–2).

The court finds that the evidence submitted on plaintiff's excessive force claim against the City of Fargo presents a genuine factual dispute requiring a jury to assess the credibility of expert testimony and other witnesses and to resolve the inconsistencies in the evidence mentioned above. Accordingly,

the parties' motions for summary judgment on plaintiff's sixth cause of action is denied.

The court notes that if the jury should determine that plaintiff's Fourth Amendment right to be free from excessive force was *not* violated by the defendant police officers, plaintiff's excessive force claim against the City of Fargo will also be dismissed.

> [None] of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

*Robinson v. City of St. Charles, MO.,* 972 F.2d 974, 977 (8th Cir.1992) (citations omitted) (emphasis in original). *See Abbott v. City of Crocker, MO.,* 30 F.3d 994, 998 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1334 (8th Cir.1993); *Turner v. White,* 980 F.2d 1180, 1183 (8th Cir.1992).

**IT IS ORDERED** that:

1. Plaintiff's motion to amend his complaint (doc. # 27) is granted.

2. Plaintiff's motion for partial summary judgment (doc. # 29) is denied.

3. Defendants' motion for summary judgment (doc. # 35) is granted with respect to plaintiff's first, second, fourth and fifth causes of action and plaintiff's false arrest, false imprisonment and malicious prosecution state law claims. Defendants' motion for summary judgment (doc. # 35) is denied with respect to plaintiff's third and sixth causes of action, plaintiff's assault and battery state law claims, and plaintiff's request for punitive damages.